Thank you your honor. Good morning may it please the court my name is Nancy Schwartz and I represent the appellant Darrell Holliday. Mr. Holliday is currently serving a hundred and twenty month sentence for the distribution of a total amount of less than one half ounce of methamphetamine. Mr. Holliday was sentenced as a career offender based on two prior convictions one of which was a 2008 conviction for distribution of 0.7 grams of cocaine under Montana law. The Montana statute penalizing the distribution of cocaine is overbroad when compared to the relevant federal comparator both in its definition of cocaine as well as the conduct found to violate the statute. I want to begin by briefly addressing the government's notice of supplemental authority followed by a discussion of how under crumb the language offer to sell was erroneously found to suffice as a controlled substance offense under the commentary to 4b 1.2. It is Holliday's position that an error inciting to the Oregon Court of Appeals decision in Pollock as opposed to the later Supreme Court decision in Pollock was an error that started in Sandoval and was repeated in crumb and more recently in this court's decision unreported decision of Sorenson improperly equates all solicitation offenses with an attempt to distribute such that all solicitation offenses then fall under the commentary to 4b 1.2. Regardless of the error in construing Oregon law, Holliday asserts that under Montana law an offer to sell does not equate to solicitation to distribute and so Montana's law penalizes more conduct than the offenses under 4b 1.2. Ms. Schwartz, can I ask you a question here? Yes. I'm wondering whether the Montana statute we can find it overbroad without undermining the court's decisions in crumb and Sorenson. I would agree so your honor. I was only bringing up the other issues based on the fact that Sandoval the opinion seemed to be constrained by the decisions that were both in Sorenson as well as crumb and so for that reason I was trying to distinguish crumb but I agree that if you're only looking to Montana law you can find that it's overbroad. First moving to the supplemental authority both sides provided this court with the case of Bautista and as this court is aware Bautista held that the regulations in effect on the date of federal sentencing control for purposes of comparison to the state statute which was directly contrary to the district courts ruling in holidays case. This makes a difference because the substance iuflupane was excluded in the current federal regulations but it's not excluded in the Montana's definition of cocaine. The government concedes that iuflupane is not contained in Montana's definition of cocaine but suggests that a remand is appropriate to determine whether there is a realistic probability or even a possibility that a defendant could be convicted for distributing iuflupane. We assert that a remand for this reason is inappropriate because under this court's decision in Rodriguez-Gamboa the ultimate legal issue is when the text of the statute is overbroad on its face whether there's a factual impossibility of the state statute being applied. So as explained in Rodriguez-Gamboa if a state statute penalizes the possession of dragons the fact that dragons do not exist means the state statute is not overbroad. iuflupane on the other hand does exist and it is not a dragon. There is not a charge for distribution of iuflupane under Montana law. Bautista is actually on point because in Bautista the federal regulation was amended to exclude the substance hemp. Arizona statute on the other hand defined marijuana to include all the parts of the plant genus cannabis and so the text of the Arizona statute did not exclude hemp. The words textual exclusion as used in Bautista is really important because if you look to Montana's definition of cocaine it does not contain a textual exclusion for the cocaine derivative iuflupane but the regulation do explicitly exclude the derivative iuflupane which renders the Montana statute overbroad. This conclusion is further supported when you look to the CFRs that actually first deregulated the substance iuflupane which were published in 2015 and the CFR noted that one of the reasons for removing iuflupane from the schedule was in part to remove civil and criminal sanctions for those who distribute iuflupane. None of that would have been necessary if it was factually impossible to prosecute someone for distribution of iuflupane. iuflupane is not a dragon so not excluding it in the text of the statute defining cocaine renders the Montana statute overbroad. Moving to the offer to sell is overbroad argument. As I indicated earlier to do that requires somewhat of a complicated tracing of the evolution of how the crime of solicitation became included as a crime under 4B1.2 by this court. And that started first with Shoemate. Shoemate argued that his offense was not included under 4B1.2. So this court looked to the Oregon decision of State v. Sargent which had held that under Oregon law soliciting another person to deliver counted as a substantial step toward committing the crime of attempted delivery. Attempted delivery counted as a crime under the commentary to the guidelines. So then under Oregon law solicitation of delivery of drugs counted as a crime because of its relationship to attempted delivery. Shoemate did discuss the solicitation offense in Cox but Shoemate was not bound by Cox specifically because of the language in Cox that said explicitly they were not deciding the issue of solicitation in the context of cocaine trafficking. So then in Shoemate Judge Paez in his concurring opinion was not necessarily applying to every state solicitation statutes but the decision was limited to Oregon law. And there was a good reason for that because Oregon says solicitation counts as a substantial step towards attempted delivery which is not how solicitation is normally defined. Then in Lee there's a footnote. Footnote 2 totally ignores the qualification that happened in Shoemate and said that under the law of the circuit solicitation qualifies as a Shoemate. But that was not really what Shoemate said which is probably why the quote says see Shoemate and does not directly cite to it. Then there's the Sandoval versus Sessions case which is where the Pollock decision was first inappropriately cited. The Court of Appeals in Pollock said the offer to sell is probable cause for arrest for distribution. So the Supreme Court in Pollock said no offer to sell is probable cause to arrest for felony possession. But unfortunately the offer to sell is sufficient for distribution language from the Court of Appeals decision is what is frequently cited to support the idea that distribution that solicitation counts as a distribution offense. This first happened in Sandoval and it was repeated in Crum and then in Sorensen. In Crum there was a continuation of citing to the incorrect holding in the Court of Appeals decision in Pollock that was later modified by recognize the analytical problem. Crimes under 4B1.2 do not include possession offenses. Solicitation is enticing or encouraging someone else to commit a crime. So if offer to sell equates with solicitation the least of the conduct penalized by offer to sell is soliciting another person to commit the offense of simple possession which does not qualify. Let me interrupt you right there let me just say this and the clock is ticking down we're down to two minutes. Okay thank you. Well you know I'm sympathetic to your arguments but we're we're bound by Crum. That's the bottom line and I had to recognize that in Your Honor I would note that in the exact language cited in Crum it's when discussing the offer to sell portion of that argument the exact language says Crum's argument turns on the Oregon Court of Appeals decision in Pollock which again the Court of Appeals decision was modified by the Supreme Court and does no longer stand for that proposition. As a three-judge panel we're an offer to sell is overbroad under Montana law and I would. Okay so you're down to one minute. Why don't you save that minute and I'll maybe throw on another 30 seconds or so and you can then reply to what the government has to say. Thank you judge. Good morning. May it please the court my name is Carla Painter I'm here on behalf of the United States for the District of Montana and I would first like to begin by discussing the only issue that defense counsel raised before the district court in this case and that was whether or not the regulations as codified in the CFR controlled for the purposes of the categorical analysis approach and here the district court determined that they did because the Code of Federal Regulations reflected the updated republished versions of the most up-to-date schedules and that is supported by the very language of 21 USC 812 which stated that those initial scheduled substances were in effect unless and until amended and it specifically directed the reader to go to the CFRs to find those updated schedules as we noted in our brief that is where the updates are being recorded and that is the applicable language as far as controlled substances now there's no question about Congress's authority to delegate that decision-making to the Attorney General that was decided by the United States Supreme Court in to be back in 1991 in that case the court recognized that the Attorney General not only had the authority to specify the drugs in the CFR it could delegate that authority to the DEA and when the DEA scheduled drugs those were controlling for the purposes of prosecution moreover applying the Code of Federal Regulations in the categorical approach has been recognized by this court in Coronado and more recently and Vega Ortiz that's 822 F 3rd 1031 that's a case oh miss miss painter could you clarify which version of the CFR which regulations are we supposed to use in this case yes judge Tonheim and the version is the most recent version and that is actually the only thing that Bautista clarified for us for purposes of this case Bautista said that we apply the law in effect at the time of sentencing so in this case we would look to the most recent Code of Federal Regulations codified in 21 CFR 1308 and we would go to the specific drugs that are listed under Schedule 2 substances now counsel's reliance on Bautista is completely misplaced for our purposes your honor if the court goes back and reviews that decision it was based on a specific definition of marijuana and a specific definition of hemp as those terms were noted in the actual definition section not the district court used the correct version of the CFR and making the comparison yes judge Tonheim she did and the important thing to note is that while the district court noted that I have flu pain was added to the regulations that was not an argument that holiday ever advanced neither in before the district court in a sentencing memo in a response to the United States sentencing memo or in its brief and it's important for this court to note that the opening brief and Bautista was filed four months before holiday filed his opening brief so this is a clear issue of waiver we did not address I have flu pain and our response because we relied not only on the defense not raising it but the defense essentially explaining it doesn't apply if you go back to the defense's opening brief at page 17 she says quote the relevant portions of the regulatory definition has not changed you see no advancement of I have flu pain at all in her response brief so we made no efforts to address it or distinguish it and again this is before we had Bautista but I can't stress enough that Bautista is not controlling for the court's purposes today the most analogous case is Vega Ortiz and again that's the case that we cite in our 28 J letter that's 822 f look to the code of federal regulations as the United States is advocating it do so here because that gives us the most up-to-date law and Vega Ortiz there was a specific exclusion noted for L methamphetamine in the regulations this court stated that that did not make methamphetamine facially overbroad in the context of the state statute what it did say is that silence as to an it is overbroad and it again noted the realistic probability standard something that defense counsel defendant has never advocated in this case we've seen no explanation of a specific instance when someone has been prosecuted the defendant or anyone else for the possession of I have flu pain moreover we can't make that definition that distinction as to overbred based on the regulations themselves because as we've noted in our brief there is no definition we have cocaine leaves and I'm sorry cocoa leaves and cocaine is included as a subsection of cocoa leaves we do not have a broad definition of cocaine as we did in Bautista with marijuana where it was specifically defined in the definition just want to touch briefly on defense counsel's argument as to offers to sell judge Piaz you are exactly correct the district court was bound by crumb and you recognize that in your concurrence and Thornson and it's also important for this court to note that this isn't just error this is a plain error analysis so in order to agree with holiday you would have to come to the conclusion that not only was the district court wrong in deciding or not to respond say discussing offers to sell it was wrong for not explicitly disregarding finding precedent in crumb so in conclusion the government believes there's there's three ways that this court can decide this case and they are in ascending order of complexity the first is to rule that the regulations the listed scheduled substances and the control sorry the Code of Federal Regulations those govern for the categorical approach that's consistent to the statute for the definitions your honor and and to be clear in some instances what's stated and 21 USC 812 won't be at odds or inconsistent with what's in the Code of Federal Regulations and sometimes Congress does act to amend the initial schedules as we saw with Batista but Batista was decided based on the definitions found in 802 not the actual substances defined in 812 didn't Congress amend the statute to define or describe cocaine after the regulations were adopted your honor if it did that was only to include specific subsections of coca leaves again when we talk about describing cocaine we have to be very particular about the language that we use because we don't have a definition of cocaine in any sense in which Congress has addressed cocaine it has specifically identified it as a subsection of coca leaves we don't have that definition moreover we weren't afforded the opportunity to discuss how cocaine relates to I a flu pain because defense counsel did not make that argument until her reply brief therefore we were left to the 28 J letter and in the few minutes I have before this court there were three ways to decide yes your honor so the first is to rule the regulations apply that the defense counsel has in fact waived the argument as to I a flu paid the second way is to determine the regulations control and to look at Vega Ortiz that is in our opinion a controlling case and this situation where we have a specific regulation noted in the CFR so this court can decide to take up the issue of I a flu pain and decide it based on Vega Ortiz the third and final way for this court to decide the case is to analyze the decision I'm sorry the issue that was raised before the district court determine the regulations apply determine that Vega Ortiz does not decide the issue before it and then remand to the district court so that we can develop that factual record and those legal arguments to explain why this case is not Batista and why this court cannot say that cocaine at the state level is overbroad under the federal regulations one procedural question yes your honor the three documents from the Montana conviction that's an issue here that are in the record or the information the judgment or there's another motion to I guess file the information those are the only three documents that we have yes your honor there was no agreement if there was it was it was not a part of the record that you have what was presented to the district court we would we would note that holiday has never contested that his conviction was for anything but cocaine you know the judgment doesn't mention cocaine no your honor that the charging documents do we would submit that that's efficient guilty yes your honor it was there a transcript of the plea here if there was it is not part of the record your honor okay thank you thank you put a minute and 30 seconds on for rebuttal we can disagree with the government that Congress did amend the statute after the regulations and I put that history in my first brief also I would also disagree with the government that the court used the current regulations I think on the last page of her decision before the sentencing hearing she clearly indicates that she's using the regulations that were in place before I who pain was was excluded she's using the regulations that were in place at the time of the district court sentencing that's the 2008 version is that correct he is the all I know is she used the regulations that were in place when holiday was sentenced in district court and not the one the I who pain was excluded in 2015 and then back to the other argument about the statute being overbroad my whole point is that the Montana statute is not precluded by Ninth Circuit precedent because or crumb only discusses Oregon law it does not discuss Montana law and Oregon law is unique because it defines solicitation to equate to attempt and Montana does not define solicitation in that way solicitation is a standalone offense in Montana based on that your honor I would ask this court to respectfully remand this case back for resentencing with mr. holiday not declared as a career offender thank you okay thank you so we appreciate your items in this case and it's submitted at this time
judges: Paez, Watford, Tunheim